IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

GUEST HOUSE AT GRACELAND, LLC,

    Plaintiff and Counter-Defendant,

v.

PYRAMID TENNESSEE MANAGEMENT,     No. 2:18-cv-02074-JTF-cgc
LLC,

    Defendant, Counter-Plaintiff, and
    Third-Party Plaintiff,

v.

ELVIS PRESLEY ENTERPRISES, INC.,

    Third-Party Defendant.

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Third-Party Defendant Elvis Presley Enterprises, Inc. ("EPE") hereby submits its Memorandum in Support of Motion for Judgment on the Pleadings pursuant to FED. R. CIV. P. 12(c), and states as follows:

### INTRODUCTION

At the core of this lawsuit is a contract dispute between Pyramid Tennessee Management Company, LLC ("Pyramid") and Guest House at Graceland, LLC ("Guest House"). EPE is not a party to the underlying dispute. Yet, Pyramid wrongfully and maliciously is trying to drag EPE into the lawsuit in order to harm the owner of Guest House and EPE. A cursory examination of the pleadings in this matter reveals that there is no basis whatsoever for Pyramid to have asserted claims against EPE and that Pyramid's claims should be dismissed as a matter of law.

In January 2018, Guest House initiated litigation against Pyramid. Pyramid retaliated by filing spurious counterclaims against Guest House and haphazardly adding a third-party claim

against EPE. Pyramid's *entire case* against EPE is premised on the alleged malfeasance of a single person: Joel Weinshanker, who owns a portion of both EPE and Guest House. Without any factual development, Pyramid incorrectly concludes that all of Mr. Weinshanker's actions and statements were simultaneously made on behalf of both EPE and Guest House. But Pyramid fails to allege any facts establishing that Mr. Weinshanker acted and spoke on behalf of EPE, and notably, Pyramid also fails to allege that any officer of EPE acted or spoke improperly.

In support of its position, Pyramid self-servingly concludes that Mr. Weinshanker acts and speaks on behalf of EPE every single time that he acts or speaks on behalf of Guest House. Pyramid's conclusion simply is wrong, and at this point in litigation, the Court is not required to accept it as true. Pyramid has failed to state any plausible claim for relief against EPE; therefore, EPE respectfully requests that the Amended Third-Party Complaint be dismissed in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Guest House initiates litigation against Pyramid.

On January 31, 2018, Guest House filed a Verified Complaint for Breach of Contract and Injunctive Relief ("Complaint") in the Chancery Court of Shelby County, Tennessee. (Doc. 1-2, pp.4-29.) In the Complaint, Guest House alleges, *inter alia*, that Pyramid breached the terms of a 2015 Hotel Management Agreement by hiring a new general manager over Guest House's objection. (Compl. ¶ 22.)

### II.    Pyramid escalates litigation by filing counterclaims against Guest House.

The day after Guest House filed the Complaint, Pyramid removed it to this Court. (Doc. 1-1.) Then, on February 14, 2018, Pyramid answered the Complaint and submitted counterclaims against Guest House containing a near-mirror-image claim that Guest House breached the terms of the Hotel Management Agreement. (Doc. 19, pp.10-29.)

### III.     Pyramid tosses in a third-party complaint against EPE.

Along with its counterclaims against Guest House, Pyramid included a third-party complaint against EPE ("Orig. Third-Party Complaint"). (Doc. 19, pp.10-34.) On March 20, 2018, Pyramid filed an amended third-party complaint against EPE ("Am. Third-Party Complaint"). (Doc. 21.)[1] In the Amended Third-Party Complaint, Pyramid makes two legal conclusions concerning EPE and its relevance to the contract dispute between Guest House and Pyramid: (1) EPE "acts on behalf of" Guest House "for all practical purposes" because Guest House "is affiliated" with EPE; and (2) Guest House and EPE are commonly owned by Joel Weinshanker, who "effectively controls all decisions and actions of GHG and its sister-company [sic], EPE." (Orig. Third-Party Compl., ¶¶ 2-3, pp.10-11; Am. Third-Party Compl., ¶ 6.) The remainder of Pyramid's allegations focus mainly on Mr. Weinshanker's alleged malfeasance relevant to the contract dispute between Guest House and Pyramid. Based upon those two legal conclusions, the allegations concerning Mr. Weinshanker's behavior, and nothing more, Pyramid asserts five claims against EPE: (1) tortious interference with contract; (2) procurement of breach of contract under Tenn. Code Ann. § 47-50-109; (3) defamation; (4) violation of the Tennessee Consumer Protection Act ("TCPA"); and (5) punitive damages.

### IV.     EPE answers and establishes the distinction between EPE and Guest House.

On March 28, 2018, EPE answered the Amended Third-Party Complaint. (Doc. 25.) There, EPE tenders facts and evidence proving that Guest House and EPE are, in fact, completely distinct entities with separate assets and distinct missions that operate independently of one another. (*Id.*, ¶¶ 6(A)(1)-(2).) Guest House is a Delaware limited liability company that

---

[1] The Original and Amended Third-Party Complaints are virtually identical. (*See* Doc. 19, pp. 10-34; *see also* Doc. 21.) Indeed, the only changes in the Amended Third-Party Complaint appear to be ministerial. However, Pyramid did not include the factual allegations it is relying upon in its Amended Third-Party Complaint. Instead, the factual allegations used in the counterclaims and the Original Third-Party Complaint (Doc. 19) were incorporated by reference into the Amended Third-Party Complaint (Doc. 21). (*See* Am. Third-Party Compl., ¶ 6.)

3

owns and operates The Guest House at Graceland, a hotel in Memphis, Tennessee; while EPE is a Tennessee corporation that owns and/or leases certain real property located on Elvis Presley Boulevard in Memphis, Tennessee, including The Graceland Mansion and correlating tourist attractions. (*Id.*) Thus, while Mr. Weinshanker is indeed a co-owner of both entities, he does not act on behalf of both companies simultaneously merely because of his status as a co-owner. And Pyramid cannot reasonably conclude that Mr. Weinshanker acts and speaks on behalf of EPE every time he acts or speaks on behalf of Guest House.

## ARGUMENT AND CITATION OF AUTHORITY

### I.      Standard on a Rule 12(c) motion for judgment on the pleadings.

A party is entitled to judgment on the pleadings "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 12(c). Courts review Rule 12(c) motions under the same standard as Rule 12(b)(6) motions. *New London Tobacco Market, Inc. v. Burley Stabilization Corp.,* No. 3:13–CV–122, 2013 U.S. Dist. LEXIS 68785, at *2 (E.D. Tenn. May 15, 2013) (internal citations omitted). However, in deciding a motion for judgment on the pleadings, a court can consider the pleadings, as well as consider any documents attached to, referenced in or incorporated by the pleadings. *See Woodall v. DSI Renal, Inc.*, 2012 U.S. Dist. LEXIS 14, at *8 (W.D. Tenn. Mar. 27, 2012).

Under FED. R. CIV. P. 12(c), although the Court must take as true all "well-pleaded material allegations of the pleadings of the opposing party," it "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007) (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). Therefore, to survive a motion for judgment on the pleadings, the plaintiff must provide "more than . . . conclusions." *Ruppe v. Knox Cnty. Bd. Of Educ.*, 993 F. Supp. 2d 807, 810 (E.D. Tenn.

4

2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[N]aked assertions devoid of further factual enhancement" do not survive a motion brought pursuant to Rule 12(c). *Id.*

  **II.**  **The Court is not required to accept as true the self-serving legal conclusions relied upon by Pyramid.**

  From the outset, the Amended Third-Party Complaint sets forth the two legal conclusions that are fatal to Pyramid's claims against EPE. First, Pyramid concludes, without any factual support, that EPE "acts on behalf of" Guest House "for all practical purposes" because Guest House "is affiliated" with EPE. (Orig. Third-Party Compl., ¶ 2, pp.10-11; Am. Third-Party Compl., ¶ 6, p.2.) Second, Pyramid concludes that Mr. Weinshanker "effectively controls all decisions and actions of GHG and its sister-company [sic], EPE," because he owns a portion of both entities. (Orig. Third-Party Compl., ¶ 3, p.11; Am. Third-Party Compl., ¶ 6, p.2.) There is no further factual development regarding these conclusions: they are legal conclusions cloaked in the guise of a factual allegation, and the Court is not required to accept them as true at this stage of litigation. *Winget*, 510 F.3d at 581-82 (affirming judgment on the pleadings where plaintiff pled and relied upon the legal conclusion that defendant failed to use "all reasonable efforts").

  Here, EPE has answered Pyramid's Amended Third-Party Complaint and established that, although Mr. Weinshanker may have some ownership interest in both entities, Guest House and EPE are distinct entities that operate independently of one another. (*See* Doc. 25, ¶¶ 6(A)(1)-(2).) At this point in litigation, there are no factual allegations affirmatively establishing that Mr. Weinshanker ever acted or spoke on behalf of EPE, as well as Guest House, with respect to the dispute between Guest House and Pyramid. Accordingly, notwithstanding that the law does not support Pyramid's position (as detailed below), Pyramid may not rest on its self-serving legal conclusions alone to prosecute its claims against EPE.

### III. The Amended Third-Party Complaint fails to state a plausible claim for relief against EPE.

At the outset, Pyramid's Amended Third-Party Complaint is devoid of any specific factual allegations as to EPE sufficient to state a plausible claim for relief, thereby warranting dismissal as matter of law under TENN. R. CIV. P. 12(c). Dismissal for insufficiency of a complaint is proper if the complaint fails to allege facts sufficient to support a "plausible" claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Federal Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(A)(2); *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556). At a minimum, "the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Jackson v. Ford Motor Co.*, No. 15-1180, 2016 WL 324383, at *1 (W.D. Tenn. Jan. 26, 2016) (Breen, C.J.) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)).

Rule 8 "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and requires "enough heft to sho[w] that the pleader is entitled to relief." *See Twombly*, 550 U.S. at 555 n.3 (brackets in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). These "allegations must be enough to raise a right to relief above the speculative level" and consist of "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Indeed, "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

"Courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In other words, the Court is not required to accept conclusory allegations, or unwarranted factual inferences. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*, 129 S. Ct. at 1950.

In the case *sub judice*, all of Pyramid's claims against EPE rely on the misguided presumption that, based solely on his ownership interest in EPE, Mr. Weinshanker's was at all times acting on behalf of EPE in his dealings with Pyramid.  However, interestingly, a close examination of Pyramid's allegations in the Amended Third-Party Complaint reveals that none of the alleged malfeasance was actually committed by any officer or employee of EPE, or any other owner of EPE besides Mr. Weinshanker.  Again, at this juncture, Pyramid may not rest on the naked legal conclusion that at every moment of his life, Mr. Weinshanker is acting on behalf of both EPE and Guest House merely because he owns a portion of both entities.  The law affords no such presumption.  To the contrary, "there is a presumption that a corporation is a distinct entity, separate from its shareholders, officers, directors or affiliated corporations[.]" *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991); *see also Lisenbee v. FedEx Corp.*, 579 F. Supp. 2d 993, 999 (M.D. Tenn. 2008) (internal citations omitted) ("Parent companies and their subsidiaries are considered separate entities with all the rights, duties, and responsibilities of a separate corporation.").

Beyond its own unfounded, self-serving legal conclusions, Pyramid's claims against EPE consist of no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that

fail to state a plausible claim for relief under FED. R. CIV. P. 8(A)(2). *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

> A. *Pyramid fails to state a plausible claim for tortious interference with contract or for procurement of breach of contract under Tenn. Code Ann. § 47-50-109.*

Under TENN. CODE ANN. § 47-50-109,

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

A claim of statutory procurement of breach of contract claim under TENN. CODE ANN. § 47-50-109 and a claim of common law tortious interference with contract "contain precisely the same elements, with the exception of the type of damages recoverable." *Smith v. Rosenthal Collins Grp.*, LLC, 340 F. Supp. 2d 860, 864 (W.D. Tenn. 2004) (citing *Givens v. Mullikin*, 75 S.W.3d 383, 405 (Tenn. 2002)). For either claim, Tennessee law permits recovery only if the injured party proves that (1) there was a legal contract; (2) the defendant knew of the existence of the contract; (3) the defendant intended to induce a breach of the contract; (4) the defendant acted maliciously; (5) the contract was actually breached; (6) the defendant's acts were the proximate cause of the breach; and (7) the plaintiff suffered damages resulting from the breach. *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999); *see also Smith v. Harriman Util. Bd.*, 26 S.W.3d 879, 886 (Tenn. Ct. App. 2000) (citing *New Life Corp. of Am. v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926 (Tenn. Ct. App. 1996)); *Dynamic Motel Mgmt., Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn. Ct. App. 1975).

Here, Pyramid's claims for tortious interference with contract and procurement of breach of contract, respectively, both rely on the same three actions and statements allegedly taken and

made by Mr. Weinshanker:  (1) Mr. Weinshanker's instruction to various employees of Guest House and EPE to refrain from interacting with Morty Valldejuli; (2) Mr. Weinshanker's "attempt to poach" Keith Hess; and (3) Mr. Weinshanker's alleged statements indicating his intent to breach the Hotel Management Agreement and use litigation to do so.  (Am. Third-Party Compl., ¶¶ 10-11, 19-20.)  As is obvious, none of the actions upon which Pyramid bases its claims can be attributed to any specific actions allegedly taken on behalf of EPE, as opposed to actions allegedly taken and statements made by Mr. Weinshanker generally on behalf of Guest House, the entity with whom Pyramid had an actual contractual relationship.

Again, Pyramid does not include *any* factual allegations establishing that Mr. Weinshanker actually acted and spoke on behalf of EPE.  In fact, the opposite can be deduced from Pyramid's allegations.  In two different places in the Original Third-Party Complaint and the Amended Third-Party Complaint, Pyramid alleges Guest House *apologized* for some of Mr. Weinshanker's statements.  (Orig. Third-Party Compl., ¶¶ 45-46; Am. Third-Party Compl., ¶ 6.) Pyramid also alleges that EPE's representatives specifically did not interview or ask questions about Pyramid's employee.  (*Id.*)  Thus, Pyramid's own allegations underscore its conclusion that Mr. Weinshanker is EPE's representative.

Simply put, Pyramid is relying on its own self-serving legal conclusion that Mr. Weinshanker took action and made statements on behalf of EPE.  The first and second causes of action in Pyramid's Amended Third-Party Complaint cannot be attributed to any specific actions allegedly taken on behalf of EPE, as opposed to actions allegedly taken and statements made by Mr. Weinshanker generally on behalf of Guest House.   The Court is not required to, and should not, take this unsound assertion as true.  Pyramid fails to otherwise allege sufficient facts in support of its claims for tortious interference with contract and procurement of breach of contract

sufficient to survive a motion for judgment on the pleadings, and, as such, EPE is entitled to judgment in its favor on those two claims. *See, e.g., Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127-COA-R3-CV, 2005 Tenn. App. LEXIS 26, at *32-33 (Tenn. Ct. App. Jan. 21, 2005) ("A complaint for tortious interference with contract must do more than simply parrot the legal elements of the cause of action. . . . [A] complaint alleging tortious interference with the performance of a contract must also allege specific facts that, if true, would support each of the seven elements of the tort.").

    B.  *Pyramid fails to state a plausible claim for defamation.*

To state a valid claim for defamation, the plaintiff must assert sufficient factual allegations to establish "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999); *see also Grant v. Commer. Appeal*, No. W2015-00208-COA-R3-CV, 2015 Tenn. App. LEXIS 750, at *27-29 (Tenn. Ct. App. Sept. 18, 2015) (citing *Aegis Sciences Corp. v. Zelenik*, No. M2012-00898-COA-R3-CV, 2013 Tenn. App. LEXIS 30, 2013 WL 175807 (Tenn. Ct. App. Jan. 16, 2013) (internal citations omitted)).

It its Amended Third-Party Complaint, Pyramid alleges,

> EPE has made or published statements that defamed Pyramid and its executive employees. EPE's false, baseless, and defamatory statements include, but are not limited to: (a) statements that Pyramid has mismanaged, or failed to manage effectively, the Hotel; (b) statements that Pyramid has not followed a sound budget or financial management plan; and (c) statements about the skill and qualifications of Pyramid Vice President Morty Valldejuli or other Pyramid employees.

(Am. Third-Party Compl., ¶ 26.)  Pyramid does not specify who made these statements or to whom they were made, when or where such statements were made, or whether the statements were written or oral.  However, interestingly, Pyramid has simultaneously alleged an identical

10

defamation claim against Guest House based on Guest House's alleged publication of ***the exact same statements*** "to third parties, including EPE." (Doc. 19, ¶¶ 77-78.) In other words, Pyramid's position is that Mr. Weinshanker (acting on behalf of both Guest House and EPE) made defamatory statements about Pyramid to himself (as a representative of EPE). It does not take astute legal reasoning to recognize the disingenuous and asinine nature of this argument.

Even assuming, *arguendo*, that Mr. Weinshanker had made these alleged statements to someone other than himself, Pyramid would still be precluded from pursuing a claim against both Guest House and EPE based on the very same allegedly defamatory statements. Notably, "the general rule is that an action may not be maintained against two persons jointly for uttering and publishing slanderous words where the declaration charges distinct causes of action against the several defendants. . . . The basis of this view is the fact that the words of one person cannot be regarded as the words of another." *Stansberry v. McKenzie*, 192 Tenn. 638, 640, 241 S.W.2d 600, 600 (Tenn. 1951). This general rule is consistent with EPE's position that Mr. Weinshaker could not have simultaneously committed wrongful conduct on behalf of both Guest House and EPE. *See generally Daimler AG v. Bauman*, 134 S.Ct. 746, 759 (2014) (internal citations omitted) ("One may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose. A subsidiary, for example, might be its parent's agent for claims arising in the place where the subsidiary operates, yet not its agent regarding claims arising elsewhere.").

Notwithstanding the aforementioned inconsistencies, Pyramid's tenuous allegations against EPE, even if taken as true (which is denied), fail to state a plausible claim for defamation for several reasons. First, Pyramid does not plead facts sufficient to establish that EPE personally published the allegedly defamatory statements at issue. *See Jackson v. Dempsey*, No.

11

1:09-CV-240, 2010 U.S. Dist. LEXIS 32823, at *8-9 (E.D. Tenn. Apr. 2, 2010). Secondly, the particular statements at issue are not defamatory. *See, e.g.*, *Thompson v. Hayes*, 748 F. Supp. 2d 824, 834-35 (E.D. Tenn. 2010) (holding that a letter to property owners containing statements about plaintiff's management capabilities was not actionable because the statements at issue merely voiced the opinion of the defendant).

Furthermore, the statements at issue, even if defamatory, would be subject to absolute or qualified privilege. For example, to the extent that Pyramid is referring to any particular statement made in the course of, or in anticipation of, this lawsuit (*e.g.*, any statements made in a pleading or motion), such statements are absolutely privileged and not actionable. *See Snedeker v. Fed. Mogul Friction*, No. 2:06-00022, 2006 U.S. Dist. LEXIS 40791, at *5-6 (M.D. Tenn. June 14, 2006); *see also Issa v. Benson*, 420 S.W.3d 23, 28 (Tenn. Ct. App. 2013) (finding that communication preliminary to proposed litigation falls within the scope of the litigation privilege). The litigation privilege recognizes the principle that "'statements made in the course of a judicial proceeding that are relevant and pertinent to the issues involved are absolutely privileged and cannot be the predicate for liability in an action for libel, slander, or invasion of privacy.'" *Goetz v. Autin*, No. No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *10 (Tenn. Ct. App. Feb. 10, 2016) (quoting *Jones v. State*, 426 S.W.3d 50, 57 (Tenn. 2013)). The privilege remains "even when the statements are made maliciously or corruptly" or include allegedly defamatory statements. *Id.* at *10.

In addition, a qualified privilege is extended to statements that consist of a comment upon facts, expression of views, or opinions, including communications such as those in dispute here, which, by Pyramid's own admission, were made in relation to "subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a

corresponding interest or duty." *See Whitehurst v. Martin Med. Ctr.*, No. W2001-03034-COA-R3-CV, 2003 Tenn. App. LEXIS 619, at *13-14 (Tenn. Ct. App. Aug. 28, 2003); *see also Hood v. Tenn. Bd. of Regents*, No. 3:04-0473, 2006 U.S. Dist. LEXIS 65881, at *31-33 (M.D. Tenn. Sept. 14, 2006) (finding statement made between business associates regarding normal employment behavior and such information shared to different offices of the defendant that benefitted from its work fell within workplace privilege); *Woods v. Helmi*, 758 S.W.2d 219, 223-24 (Tenn. Ct. App. 1988) (finding that comments concerning nurse anesthetist's performance were qualifiedly privileged when communicated to those responsible for overseeing nurse's performance, even though persons receiving communication were employed by different corporate entities).

Given the aforementioned authorities, there is no conceivable basis in which the tenuous allegations in the Amended Third-Party Complaint amount to an actionable claim for defamation. As such, Pyramid's Third Cause of Action must be dismissed as a matter of law.

C. *Pyramid fails to state a plausible claim for violation of the TCPA.*

The TCPA provides,

> [a] person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

TENN. CODE ANN. § 47-18-109(a)(1). Thus, in order to recover under the TCPA "the plaintiff must prove: (1) that the defendant engaged in an unfair and deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated…." *Foster Bus. Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV, 2009

Tenn. App. LEXIS 45, at *70-71 (Tenn. Ct. App. Jan. 15, 2009) (internal citations omitted).

Here, Pyramid's TCPA claim unequivocally fails as a matter of law. As a preliminary matter, Pyramid is not a "consumer" as defined under the TCPA. More specifically, TENN. CODE ANN. § 47-18-103 defines "Consumer" and "Consumer Transaction" as follows:

> (2) "Consumer" means any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated or any person who purchases or to whom is offered for sale a franchise or distributorship agreement or any similar type of business opportunity;
>
> . . . .
>
> (19) "Trade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated.

TENN. CODE ANN. § 47-18-103(2), (19). Consistently, "the long enumeration of specific 'unfair or deceptive acts or practices' that the [TCPA] is designed to deter reveals that the [TCPA] is concerned with consumer transactions, particularly unfair sales and marketing techniques." *See Sears Roebuck & Co. v. Emerson Elec. Co.*, No. 02 C 5771, 2003 U.S. Dist. LEXIS 332, at *34 (N.D. Ill. Jan. 7, 2003) (citing TENN. CODE ANN. § 47-18-104).

The present dispute, which arises out of a hotel management agreement between two corporate entities, does not involve any type of consumer transaction as contemplated by the TCPA. *See Operations Mgmt. Int'l, Inc. v. Tengasco, Inc.*, 35 F. Supp. 2d 1052, 1058 (E.D. Tenn. 1999) (holding that there was no consumer transaction in a teaming agreement between two corporations that did not involve the purchase of anything of value and did not involve one corporation attempting to induce the other corporation to buy anything through deceptive advertising or any other means). Courts construing the TCPA have expressly declined to extend

14

its scope to alleged "deceptive practices unrelated to consumer transactions or consumer injury." *See Sears Roebuck*, 2003 U.S. Dist. LEXIS 332, at *34-35. Indeed, where, as here, the purported wrongdoing was not based on "any type of consumer transaction," it is axiomatic that the TCPA will not apply. *Operations Mgmt. Int'l*, 35 F. Supp. 2d at 1058.

Even assuming, *arguendo*, that the TCPA did apply here (which is denied), Pyramid's claim nonetheless still fails. Notably, "[c]laims under the Tennessee Consumer Protection Act must be pleaded with the same particularity . . . require[d] of common-law fraud claims." *McLean v. Bourget's Bike Works, Inc.,* No. M2003-01944-COA-R3-CV, 2005 Tenn. App. LEXIS 645, at *20-21 (Tenn. Ct. App. Oct. 7, 2005). FED. R. CIV. P. 9(b) specifically elevates the pleading requirement for fraud-based claims and fraudulent concealment allegations. When pleading fraud, a party "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "To satisfy FRCP 9(b), a plaintiff must at minimum allege the time, place and contents of the misrepresentations(s) upon which he relied." *Bender v. Southland*, 749 F.2d 1205, 1216 (6th Cir. 1984) (citations omitted).

Notwithstanding the heightened pleading standard for TCPA claims, this cause of action rests solely on Pyramid's bare-bones, conclusory assertion that "Pyramid sustained an ascertainable loss of money" due to EPE's "false and misleading representations of fact." (Am. Third-Party Compl., ¶¶ 32, 34.) Pyramid does not identify the time, place, or content of EPE's alleged "false and misleading representations of fact" that it allegedly relied upon. Nor does Pyramid attribute any purportedly misleading statement to an individual officer of EPE – only EPE generally. Nonetheless, without further explanation, Pyramid contends that "[t]his conduct on the part of EPE constituted an unfair or deceptive act or practice under Tenn. Code Ann. § 47-18-104(b)(8)." (*Id.*, ¶ 33.)

15

The complete dearth of factual development associated with this cause of action is notable: it is the very definition of an impermissible "naked assertion of fact devoid of further factual enhancement." *Ruppe,* 993 F. Supp. 2d at 810 (*citing Twombly,* 550 U.S. at 555). Given that Pyramid's stated factual allegations fail to establish a sufficient nexus between the alleged misconduct and EPE's alleged bad actors, Pyramid's TCPA claim fails on its face. *See, e.g.*, *Cloud Nine, L.L.C. v. Whaley*, 650 F. Supp. 2d 789, 798 (E.D. Tenn. 2009) ("[P]laintiffs asserting claims under the [TCPA] are required to show that the defendant's wrongful conduct proximately caused their injury."). Accordingly, Pyramid has not stated a plausible claim under the TCPA, and judgment must be rendered in favor of EPE on the Fourth Cause of Action.

D. *Pyramid is not entitled to punitive damages.*

Pyramid's Fifth Cause of Action seeking punitive damages from EPE necessarily fails because Pyramid's underlying four claims against EPE are all subject to judgment in favor of EPE. *Kantz v. Lublin*, No. 3:14-01113, 2015 U.S. Dist. LEXIS 46017, at *58 (M.D. Tenn. Apr. 6, 2015) (quoting *Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 755 (Tenn. Ct. App. 1989)) (holding that punitive damages cannot be recovered in the absence of actual damages).

## CONCLUSION

Pyramid's entire case against EPE is based upon the incorrect, self-serving legal conclusion that Mr. Weinshanker simultaneously acts and speaks on behalf of EPE as well as Guest House. This simply is wrong, and at this point in litigation, the Court is not required to accept that legal conclusion as true. Since this legal conclusion is the basis for all of Pyramid's claims against EPE in the Amended Third-Party Complaint, judgment should be rendered in favor of EPE pursuant to FED. R. CIV. P. 12(c).

Respectfully submitted,

/s/ *Clarence A. Wilbon*
Clarence A. Wilbon (BPR No. 023378)
J. Bennett Fox, Jr. (BPR No. 026828)
M. Roxana Rudolph (BPR No. 034825)
Adams and Reese LLP
6075 Poplar Ave. Suite 700
Memphis, TN 38119
Phone: 901-524-5324
Fax: 901-524-5424
Email: clarence.wilbon@arlaw.com
Email: ben.fox@arlaw.com
Email: roxy.rudolph@arlaw.com

*Attorneys for Third-Party Defendant EPE*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ *Clarence A. Wilbon*
Clarence A. Wilbon